LYNDE ROWLAND *vs.* THE NEW YORK, NEW HAVEN &
HARTFORD RAILROAD COMPANY.

New Haven & Fairfield Cos., June T., 1891. ANDREWS, C. J., CARPEN-
TER, SEYMOUR, TORRANCE and FENN, Js.

The plaintiff asked the freight cashier of a railroad company at its freight
office in *W* what the freight rate was from there to *B*. The cashier,
who did not know and whose duties did not require him to know, asked
the way-bill clerk in the same office, but the clerk, by reason of the
noise of a passing train, failed to hear the question correctly and un-
derstood him to ask the rate to *M*, a place not so distant, and gave him
the rate as thirteen cents per hundred weight, instead of twenty-one
cents, the correct rate to *B*. The cashier then figured up the amount
and stated to the plaintiff that it would be $9.75, which the plaintiff
paid and delivered the goods to the railroad company for transportation,
and requested that they be forwarded immediately. The regular rate
was $15.75, which was a reasonable price, and the plaintiff would have
paid it if it had been stated as the price. After the plaintiff had left
the clerk discovered his mistake and endeavored to find him, but he
had left town, and not knowing how to communicate with him, he sent
on the goods to *B*, with instructions to the station agent there to col-
lect the additional $6. The mistake was fully explained to the plaint-
iff there, but he refused to pay it and demanded the goods, which the
agent refused to deliver without the additional payment, and the plaint-
iff afterwards brought a suit for them. Held—
1. That as the freight cashier passed on the plaintiff's inquiry to the way-
   bill clerk, who answered it as he understood it, it was the same as if
   the inquiry had been made directly to the clerk by the plaintiff.
2. That, regarding the clerk as representing the company in the transaction,
   the minds of the parties, by reason of the mistake as to the destination
   of the goods, had not met upon the question of the freight-rate to be
   charged.
3. That their minds not having met there was no contract.
4. That there having been no contract the defendant had a right to charge
   a reasonable price for the service rendered, and to hold the goods until
   it was paid.

[Argued June 3d—decided August 5th, 1891.]

ACTION for the recovery of personal property; brought
to the Superior Court in New Haven County and tried to
the jury before *F. B. Hall, J.* Verdict for the defendant,
and appeal by the plaintiff for error in the charge of the
court. The case is fully stated in the opinion.

*J. P. Pigott* and *W. S. Pardee*, for the appellant.

1. There was a contract. The parties were fully able to contract; the subject matter was lawful; the proposition was distinctly made — "Five buggies to Branford;" and was distinctly understood by the cashier; and the price was made $9.75, and that price was paid. The written receipt shows that the contract between the plaintiff and the only man he dealt with, the freight cashier, was fully understood as to all points necessary to make a contract, namely—the goods to be shipped; the destination; the price; the terms; the payment by one party of the price asked. Why then is this not a contract? "Because" (say the defendants) "we made a mistake in giving the price." On this question the facts are exceedingly simple. The plaintiff stepped up to the freight cashier's desk and asked the rate to Branford. The freight cashier, not carrying in his mind all the rates for all the stations of the road on all the various articles of freight, undertook to ascertain what this rate was. The finding states that at this time there was hanging in the office a book containing a classification of freight and a tariff-sheet giving the rate of freight on a given kind of goods from one station to another, and that the defendant's employees had no authority to give any other rates than those in this book and sheet, and no other means of informing shippers of the rates than by consulting them. It also appears that there was in the same office a clerk whose duty it was to look up rates from the book and sheet for the cashier when inquired of by him, and that the cashier did ask him to look up the rate on five carriages from Waterbury to Branford; but that the clerk understood him to say "to Milford," and gave him the Milford rate; that the cashier then figured it up, and found it was $9.75, and told the plaintiff that that was the rate; that the cashier the next morning took this sum and gave the receipt "to Branford." It appears then that the sole mistake was one of price, and that this mistake was made by the clerk in his dealing with the cashier, and that the plaintiff had nothing to do with causing the error. The cashier "having no other means of informing

shippers of the rates of freight than by consulting the classification book and tariff-sheet," chose not to consult them, but to consult another clerk, whose only means of obtaining the information was likewise to look up the rates in the classification book and rate-sheet. This is not such a mistake as prevents the formation of the contract. Benjamin on Sales, 4th Am. ed., § 417. "Where the mistake is that of one party only to the contract, the party laboring under the mistake must bear the consequences in the absence of any fraud or warranty. If *A* and *B* contract for the sale of the cargo per ship Peerless and there be two ships of that name, and *A* mean one ship and *B* intend the other, there is no contract. But if there be but one ship Peerless and *A* sell the cargo of that ship to *B*, the latter would not be permitted to excuse himself on the ground that he had in mind the ship Peeress and intended to contract for a cargo by the last named ship. The rule of law is general, that whatever a man's real intention may be, if he manifests an intention to another party, so as to induce that other party to act upon it, he will be estopped from denying that the intention as manifested was his real intention." See also 2 Addison on Contracts, *1183; Anson on Contracts, 123, 131; Wald's Pollack on Contracts, 436; *Brainard* v. *Arnold*, 27 Conn., 617, 624; *Town of Essex* v. *Day*, 52 id., 466. Clearly there was here a question of fact for the jury, and yet the judge took the whole case away from the jury and told them there was no question of fact for them to decide.

2. The plaintiff was entitled to recover if there was a contract. He had in that case a right to the immediate delivery of the goods on their arrival in Branford. The defendant kept them eight months under a claim of lien for carrier's services, which of course as a matter of law involved the claim of the right to sell to make the lien effective. It is found that the plaintiff " demanded that the property be delivered to him at Branford," and it is admitted by the pleadings that the defendant refused to deliver it. " A demand and refusal is the proper evidence of a conversion. Whenever the owner of goods makes a demand of them

from the possessor, and he neglects or refuses to deliver them, this is sufficient evidence to warrant a jury to find a conversion, unless the defendant had lawful right to detain them." 2 Swift Dig., 537.

*W. K. Townsend* and *G. D. Watrous*, for the appellee.

TORRANCE, J.   On the 14th of August, 1889, the plaintiff, at the defendant's freight office in Waterbury, asked the freight cashier what the rate of freight was from Waterbury to Branford, on certain described goods.   At that time such rate had been fixed and established by the defendant, and published in a book and tariff-sheet, which then hung in the office, for the information of shippers and convenient for their use.   The defendant's employees had no authority to give any other rates for carrying freight than those contained in this book and tariff-sheet, and had no means of knowing the rates except by consulting the book and sheet.

It was no part of the duty of the freight cashier to know the rates or to answer questions concerning them.   Such duty devolved upon the way-bill clerk, who was in the same office.   When the plaintiff asked said question, the freight cashier, not knowing what the rate was, turned and inquired of the way-bill clerk what the rate was.   On account of the noise made by a passing train and by persons in the office, the way-bill clerk understood the inquiry to be for the rate to Milford, and in reply gave from the book and tariff-sheet the rate to Milford, namely, thirteen cents per hundred weight, instead of the rate to Branford, which was twenty-one cents per hundred.   Thereupon the freight cashier, on account of the mistake, in figuring up the amount that would be due on the plaintiff's goods to Branford, adopted the rate to Milford instead of the rate to Branford, making the amount $9.75 instead of $15.75, which was the true tariff rate.   The next day the plaintiff delivered his goods to the defendant, paid the $9.75, and took a receipt therefor.   He requested the freight to be sent forward

immediately, and said he was going to take the train then standing in front of the freight office.

Shortly after the plaintiff left the way-bill clerk discovered the mistake. The defendant's employees then tried to find the plaintiff to inform him of the mistake, but learning that he had 'left town, and not knowing where they could communicate with him, and knowing that he desired the goods to go forward immediately, forwarded the same with instructions to the station agent at Branford to adjust the matter and collect the additional six dollars, as was usual in cases of such mistake.

On the arrival of the goods at Branford the mistake was fully explained to the plaintiff, and the defendant's agent there refused to deliver the goods to the plaintiff unless the latter would either pay or agree to pay the six dollars. The plaintiff demanded that the property should be delivered to him then and there, and refused to pay or agree to pay the six dollars. The defendant's tariff rates for freight were fair and reasonable rates, and had been in force for five years prior to August, 1889. The goods have ever since remained in the custody of the defendant.

On the 17th of March, 1890, the plaintiff brought this action to recover the value of the goods. On the 29th of March, 1890, the defendant tendered the goods to the plaintiff free of charge, but the plaintiff refused to accept them, on the ground that the defendant by its acts had converted the property and was liable for the full value thereof. There was no evidence that the plaintiff had suffered any injury by being deprived of the property from the time of its arrival in Branford to the time it was tendered to him. If the plaintiff had been informed before shipping the goods that the freight charge would be $15.75, he would have paid that sum, and shipped them as they were shipped.

The case was tried to the jury, and the record shows that the above constitute all the material facts concerning which evidence was given on the trial, and that except with reference to the value of the property there was on the trial no conflicting evidence.

Under these circumstances, in charging the jury, the court, having called their attention to the pleadings and the issues to be decided, stated to them, in substance, that questions of fact were to be decided by the jury and questions of law by the court; that in the present case there appeared in the evidence no conflict whatever, and no disputed question of fact for the jury to decide. The court thereupon detailed to the jury, as facts concerning which there was no conflict in the evidence, the facts above set forth, and instructed them that, assuming these to be the facts in the case, the plaintiff was not, as a matter of law, entitled to recover; that if the jury found that there occurred such a mistake and misunderstanding as to the destination of this freight when the rates were given to the plaintiff, there was, as matter of law, no such meeting of the minds of the parties as constituted a contract by the defendant to carry the freight from Waterbury to Branford for the sum of $9.75; and that the defendant was entitled to charge a fair and reasonable sum, and that the refusal to deliver the goods until such sum was paid was not such an appropriation or conversion of the goods as entitled the plaintiff to recover.

The errors assigned are two in number, namely, in charging the jury, first, " that assuming these (the facts detailed in the finding) to be the facts in the case, the plaintiff was not as matter of law entitled to recover," and second, "that the refusal of the defendant to deliver the freight at Branford until such sum was paid, was not such an appropriation or conversion of the goods as entitled the plaintiff to recover."

From the pleadings in the case, and from the facts detailed in evidence, it is apparent that one of the main questions in the case was, whether the contract which was in form entered into between the plaintiff and defendant was void on account of the mistake on the part of the defendant, set up in the pleadings and shown in evidence. The court in substance told the jury that it was their duty to find the facts from the evidence; that as there was on the material facts

in the case no conflicting evidence, the court would assume them to be proved; and that if the jury found them to be proved, then on such assumption there was, as matter of law, no contract, and the plaintiff was not entitled to recover.

This we think is the fair import of the charge. It proceeds upon the assumption that the facts detailed in evidence and upon the record are true ; that a mistake as to the rate for freight between Waterbury and Branford was made in the way and manner and under the circumstances set forth upon the record ; and that the jury would so find. The jury were told that such a mistake prevented the formation of a contract between the plaintiff and defendant to carry the goods for $9.75. The plaintiff claims that such a mistake did not prevent the formation of such contract. The question therefore is, whether, assuming the facts to be as they are detailed on the record, the court charged the jury correctly.

The plaintiff applied at the freight office of the defendant for information concerning the rate of freight upon certain goods between Waterbury and Branford. He found there two employees, one called the freight cashier, the other the way-bill clerk. Both of them were present in the same office, attending to their appropriate duties, which were separate and distinct. The plaintiff asked the freight cashier what such rate was. The cashier did not know, nor was it his duty to know, what the rate was ; he therefore turned to the way-bill clerk and repeated to him the plaintiff's question. The way-bill clerk, by an innocent mistake, supposed the plaintiff's question to be, what is the rate from Waterbury to Milford, and solely on account of this mistake, after informing himself from the tariff-sheet and freight book, gave the rate between the two last named points. The defendant could only make the contract through its agent or agents, and the two clerks on the assumed state of facts were the agents through whom the plaintiff attempted to contract with the defendant.

The plaintiff's question, though at first and in form addressed to the freight cashier, was in fact and finally addressed

to the way-bill clerk, and by him alone it was answered. He therefore, and not the freight cashier, in fact fixed the terms of the proposal made by the defendant, as to the only point that was then of any importance to the plaintiff or defendant, namely, the rate. It was just as if the plaintiff had seen the way-bill clerk alone, and had addressed to him his question, and had been answered by mistake; and the freight cashier had figured up the amount, taken the money, and given a receipt based upon information given him by the way-bill clerk or the plaintiff. Looking then at the substance of the matter, rather than its form, the proposal to carry the goods for thirteen cents per hundred weight was made by the way-bill clerk rather than by the freight cashier. In point of fact all the latter did was to figure up what the aggregate charge would be, based upon the statement made by the way-bill clerk, take the pay therefor, and give a receipt.

Under such circumstances it is plain that the defendant understood the question to be, what is the rate to Milford, and made a proposal based upon that understanding, which was in effect a proposal to carry the goods to Milford, while the plaintiff understood the proposal to be to carry the goods to Branford.

No question is raised upon the record as to negligence on the part of the defendant or its agents in this matter, nor as to estoppel, nor as to the sufficiency or correctness of the charge in any respect except as stated in the reasons of appeal.

On the assumed state of facts we think the minds of the parties never met on account of this fundamental error or mistake, the result being that the contract attempted to be made was not in fact made. In this view of the matter the case comes clearly within the principles laid down in the case of the *New Haven & Hartford Railroad Co.* v. *Jackson*, 24 Conn., 514, and must be governed thereby. The plaintiff, in his brief, assumes that the proposal was made by the freight cashier and not by the way-bill clerk. He says that whether he dealt with the one or the other was a question

of fact for the jury to decide ; and that the court either decided this question of fact, and held that the plaintiff dealt with the cashier, or held that it made no difference with which one he dealt.

We think, as is apparent from what has already been said, that the plaintiff is wrong in his assumption that the proposal was made by the freight cashier. The facts do not warrant the assumption. It is true that whether the plaintiff dealt with the one or the other was a question of fact, but the court did not decide it as a question of fact, nor, if so, is that question before us. The question before us is, whether, assuming the truth of the facts disclosed by the record, the court in the part of the charge now in question stated correctly the law applicable thereto. We hold that it did, and that there is no error upon this point.

The remaining question is, whether the court erred in charging the jury as set forth in the second reason of appeal. The goods were carried to Branford and no claim seems to have been made on the trial below, and it is not made before us, that by so doing the defendant had expressly or impliedly agreed to carry them there for $9.75. The facts of record afford no warrant for finding the existence of such a contract, and we must assume that the jury found that there was none.

The plaintiff demanded that his goods should be delivered to him at Branford, and insisted upon this. Had his supposed contract with the defendant been a valid one, he would have been entitled to such delivery without further payment. But there was no such contract. The defendant had performed a valuable service for him and proposed to charge him a reasonable and fair rate therefor, which rate, but for an innocent mistake, he would have paid. He insisted upon retaining the benefit of the service rendered him, without paying therefor the regular and reasonable rate. That he did this under the mistaken belief that he had made a special contract for such services can make no difference.

The part of the charge now in question was based upon

the assumption that the jury would find that there was no special contract to carry the goods for $9.75 ; that there was no subsequent contract, express or implied, to carry them for that price ; that the goods had been taken to Branford under such circumstances as would entitle the defendant to reasonable compensation for its services ; that the rate charged was reasonable, and that the plaintiff insisted upon the delivery of the goods to him at Branford.

Upon such a state of facts, which we must assume the jury found to be true, the charge of the court was correct.

There is no error apparent upon the record.

In this opinion the other judges concurred.