MOFFETT, HODGKINS & CLARKE CO. v. CITY OF ROCHESTER et al.

(Circuit Court of Appeals, Second Circuit. December 7, 1898.)

No. 5.

1. RESCISSION OF CONTRACT—MISTAKE DUE TO NEGLIGENCE.

The negligent omission by a bidder for public work to take into consideration certain features of the work in making the estimates on which its bid was based does not constitute a mistake which will authorize a court of equity to release it from the contract created by the acceptance of such bid.

2. SAME—GROUNDS—MISTAKE.

Not every mistake which would be sufficient ground for the refusal of a court of equity to decree the specific performance of a contract will authorize it to rescind and annul such contract.

3. SAME—POWER OF COURT OF EQUITY—MISTAKE BY ONE PARTY.

A court of equity has no power to rescind a contract solely on the ground of a mistake by one party.

4. SAME—CONTRACT FOR PUBLIC WORK—MISTAKE IN BID.

The charter of a city required the executive board to advertise for sealed bids for public work, and provided that each bid should be accompanied by a bond, and should not be withdrawn until acted upon. An advertisement for bids for certain public work required separate bids, numbered 1 and 2, for different parts of the work, and contained the condition that bids submitted could not be withdrawn. Complainant submitted two separate bids, as required, and, after contract No. 1 had been awarded to a lower bidder, notified the board that its two bids were to be considered together as a single proposal, and also that certain errors had been made in its bid No. 2, and demanded that such errors be corrected, and its bids be both accepted or both rejected. It made no offer to comply with bid No. 2, even though corrected, if accepted singly. Such bid, being the lowest, was accepted by the board as written; whereupon complainant made default, and commenced suit for the reformation or rescission of the contract. One of the mistakes alleged and shown was due to negligence in failing to make proper computations and the other to a clerical error. Held, that the charter precluded the board from allowing a modification of the bid after it was opened, and required its acceptance as the lowest presented, and that the court had no power to either reform or rescind the contract on the facts shown.

Shipman, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This was a suit in equity by the Moffett, Hodgkins & Clarke Company against the city of Rochester and others for the reformation or rescission of a contract for public work. From a decree rescinding and annulling the contract (82 Fed. 255), the city appeals.

Joseph H. Choate, for appellant.
Louis Marshall, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge.     By the decree appealed from, the complainant has been released from the obligation to enter into and perform a contract with the city of Rochester for the construction of certain municipal works conformably to the terms of a written proposal delivered by the complainant to the executive board of said city.     The decree adjudged the proposal void, and ordered it rescinded, upon the theory that it embodied terms inserted by the mistake of the complainant.     The case presents the general question of the power of a court of equity to rescind a contract on the ground of mistake.

Under the provisions of the charter of the city of Rochester, the executive board has control of the waterworks of the city, and authority to let contracts for such extensions and additions as it may from time to time determine to make.     In December, 1892, the board, having determined to make extensions and additions, invited proposals for contracts, among them for those known as "Contract No. 1" and "Contract No. 2."     This was done pursuant to section 172 of the charter, which reads as follows:

"The executive board is hereby directed to cause a notice to be published in one or more of the daily newspapers of said city, at least ten days before the letting of any contract, for sealed proposals therefor, each to be accompanied by a bond signed by at least two responsible sureties, conditioned that the person, firm or corporation making such bid, if it is accepted, will perform the work or furnish the materials, or both, mentioned in such proposals, and fulfill any contract that may be made with him, them or it, and the amount specified in the bond shall be recoverable thereon in case the proposer fails to perform the conditions of the bond and its accompanying proposal; such bids shall be opened on the day named in such notice.     Said board may let any contracts as it deems for the best interests of taxpayers, but it shall publish all bids received by it, and the persons, firms, or corporations to whom contracts are awarded.     Such contracts shall be enforceable by and in the name of the city of Rochester, or said executive board as such.     Neither the principal or sureties on any bid or bond shall have the right to withdraw or cancel the same until the board shall have let the contract for which such bid is made, and the same shall have been duly executed."

Contract No. 1 contemplated the construction of a masonry conduit for a distance of 12,000 feet from Hemlock Lake northward.     Contract No. 2 contemplated the construction of a riveted steel pipe conduit, either 38 or 40 inches in diameter, and 140,000 feet long, commencing at the north end of said masonry conduit, and terminating at Mt. Hope Reservoir, with an option to the executive board of selecting either one of two different routes (designated as "A" and "B") over a length of about 8,000 feet.

The notice inviting bids required separate bids for the different contracts.     It stated that the award would be made as soon as practicable after the bids were publicly opened and read, and that, after the delivery of the bids to the board, "the bid cannot be withdrawn."     The complainant, a corporation engaged in the contracting business, submitted proposals for each of the two contracts.     Each was distinct in itself, but instead of being inclosed in a separate sealed envelope, as required

by the notice to the bidders, the complainant inclosed and delivered both under one cover.

The proposals of the various bidders for the work were opened by the board at the time specified in the notice, and severally read in the presence of the bidders. For contract No. 1 the bid of the complainant was about $81,000 higher than that of the lowest bidder. For contract No. 2, route A, 38-inch pipe, the bid of the complainant was $903,324, being about $220,000 below that of the next lowest bidder; and for route B, 38-inch pipe, the bid of the complainant was $857,552, being about $273,000 below that of the next lowest bidder.

The evidence satisfactorily proves that the complainant made a clerical error in inserting in the proposal for contract No. 2, route B, the price of 50 cents, instead of 70 cents, per cubic yard for certain earth excavation (of the estimated quantity of 184,000 cubic yards), whereby the total amount of the bid, when the various items were tabulated, was $36,800 lower than it would otherwise have been. The evidence also indicates that the complainant made an erroneous estimate of the cost of certain tunnel excavation by omitting to take into consideration certain features of the work, and in consequence inserted in that proposal the price of $1.50 per cubic yard, whereas it would have otherwise inserted a price of $15. At the estimated quantity of this excavation, the bid was $27,000 less than it would have been at $15 per cubic yard. These errors were doubtless attributable to the haste in which the specifications were considered and the proposals prepared by the complainant,—a haste which was unnecessary and almost inexcusable. At the time of the public reading of the bids the complainant called the attention of the board to the mistake in the price for the earth excavation, but did not mention the other alleged error. It did not ask to withdraw the bid, and took no further action in that behalf until about 20 days thereafter, and when the board had already awarded contract No. 1 to the lowest bidder. The complainant then sent a communication to the board, insisting that its bid for the whole work included in contracts No. 1 and No. 2 was a single proposal, protesting against letting the two contracts to different contractors, and stating that clerical errors had been made in the proposal for contract No. 2, route B, in the prices for earth excavation and tunnel excavation, and the details of the errors. The communication concluded as follows: "We therefore respectfully request either that the contract in its entirety for both sections of the work be awarded to us, at the corrected prices, or that we may be allowed to withdraw our proposal." The board, after receiving this communication, adopted resolutions awarding contract No. 2, route B, to the complainant. Thereupon the complainant commenced the present action.

It is manifest that one of the alleged mistakes—that in respect to the tunnel excavation—was not a mistake in any legal sense, but was a negligent omission, arising from an inadequate calculation of the cost of the work. Courts cannot permit such omissions to be brought forward by those who make them as a ground for receding from their engagements. The party in fault must have exercised at least the degree of diligence which may be fairly expected from a reasonable person.

It is also manifest that the complainant did not intend to give the board an opportunity to correct the mistakes and award the contract on the corrected basis. There was no color of foundation for the assertion that the proposals were to be treated as a single bid for contracts No. 1 and No. 2, and that both contracts must be awarded to the complainant or neither. The position thus taken by the complainant was well calculated to excite distrust on the part of the board, and induce its members to believe that the alleged mistakes were an afterthought, conceived when the complainant had become convinced, by studying the proposals of its competitors, that it could not profitably carry out the contract on the terms proposed.

The case differs quite radically from any reported in the books arising under the head of mistake. The contract contemplated an extensive and important undertaking, the cost of which could only be intelligently estimated after a thorough investigation of all the conditions by competent experts. It was to be let, after a competitive bidding, by a board of public officers, who were not permitted to exercise any favoritism or indulgence, who were required by law to consult alone the interests of the municipality they represented, and who would be exposed to just censure if they should tolerate any modification of a proposal in his own favor by a bidder. The statute, as well as the notice to bidders, informed all bidders that a proposal once submitted could not be withdrawn. A proposal made under such circumstances is entitled to be regarded as having some attributes of finality which do not belong to ordinary contracts.

Although the charter provisions do not preclude any relief by the court to a bidder in a proper case, it is designed in order to protect the city from the danger of collusion between the board and bidders, or between bidders themselves, to constitute a proposal a perfect contract, as regards the bidder, from the time of its delivery to the board. The statute would be a nullity if the board or the courts could rescind such a contract whenever the bidder had made a mistake in the terms of his proposal. The nature of the contract forbids the court to interfere with it, much less to annul it, upon any latitudinarian notions of the doctrine of mistake as administered in equity.

The general doctrine is succinctly expressed in 15 Am. & Eng. Enc. Law, p. 628, as follows:

"In order that a mistake may come within the cognizance of a court of equity, it must be shown to be—First, material, or the moving cause of the complaining party's action; second, mutual, or shared in by both parties to the transaction; third, unintentional; and, fourth, free from negligence."

The salutary power of courts of equity to rescind or reform contracts which do not express the real intention of the parties is not to be extended to cases where the contract, because of the mistake of one of the parties, fails only to express the meaning of that party, and he seeks relief purely on the ground of his own mistake. The correct rule is as stated in Addison on Contracts:

"Where a mistake is unilateral, and the party by whom it was made is the sufferer, relief will not be granted unless there has been some undue influence, misrepresentation, surprise, or abuse of confidence." 2 Add. Cont. p. 1182.

The court below adopted the opinion which has been sometimes expressed obiter by judges, and frequently quoted by text writers, that equity will not reform a written contract unless for the mistake of both parties, but may rescind and cancel one upon the ground of a mistake by either. Thus, it is said in Dulany v. Rogers, 50 Md. 533: "A mistake on one side may be ground for rescinding, but not for reforming, a written agreement." See, also, Diman v. Railroad Co., 5 R. I. 130; Hearne v. Insurance Co., 20 Wall. 491; Smith v. Mackin, 4 Lans. 41. The opinion seems to have originated in the observation in Mortimer v. Shortall, 2 Dru. & War. 373, that "a mistake on one side might be a ground for rescinding a contract, but could never be relied on as a reason for taking from a man what he thought he was to get under his agreement,"—an observation which is neither lucid nor logical when read disconnected from the contract. What the proposition means, and all it means, is that a contract cannot be reformed into a new contract for the mistake of one party only, but may be rescinded for a mistake of one party whenever the circumstances of the case are such that it would be inequitable to allow the other party to enforce it, and inadequacy of consideration alone is not such a circumstance. Eyre v. Potter, 15 How. 58, 59. A very extended examination of the reports has failed to disclose a case in which a judgment rescinding a contract has proceeded solely upon the ground that the terms as reduced to writing, although expressing the understanding of one party, did not express that of the other. In all the reported cases where there was not the element of mutual mistake, or mistake of one side with knowledge on the other, there was, in the language of Addison, "some undue influence, misrepresentation, surprise, or abuse of confidence," or the contract was so oppressive as to be unconscionable.

The courts have refused to reform contracts, and decreed rescission, where it was plain that the terms did not represent the real agreement of the parties, and it was not satisfactorily proved what were the terms of the real agreement in its entirety, or where the further terms could not be given effect without contravening the statute of frauds. So, also, there are many cases in the reports where the courts have refused to decree specific performance of contracts which, because of the mistake of one party, did not embody his understanding, and in these cases the plaintiff was left to his remedy at law. They proceeded on the principle that a court of equity, in the exercise of judicial discretion, will sometimes refuse specific performance of a contract which it would not order to be delivered up; "for," to use the language of Lord Elden, "the distinction is always laid down that there are many cases in which the party has obtained a right to sue upon the contract at law, and under such circumstances that his conscience cannot be affected here so as to deprive him of that remedy, and yet, on the other hand, the court, declaring he ought to be at liberty to proceed at law, will not interpose actively to aid him, and specifically enforce the contract." Mortlock v. Buller, 10 Ves. 307. The exposition of the principle is given by Chief Justice Shaw in Railroad Corp. v. Babcock, 6 Metc. (Mass.) 352, thus:

"In an application to a court of equity for a specific performance, a decree for such performance is not a matter of strict right, on the proof of the agree-

ment, but may be rebutted by showing that to require such an execution would be inequitable. A defendant, therefore, may not only show that the agreement is void by proof of fraud or duress, which would avoid it at law; but he may also show that, without any gross laches of his own, he was led into a mistake, by an uncertainty or obscurity in the descriptive part of the agreement, by which he in fact mistook one line or one monument for another, though not misled by any misrepresentation of the other party, so that the agreement applied to a different subject from that which he understood at the time; or that the bargain was hard, unequal, and oppressive, and would operate in a manner different from that which was in the contemplation of the parties when it was executed. In either of these cases equity will refuse to interfere, and will leave the claimant to his remedy at law."

A review of the multitude of adjudged cases upon the point is impracticable, but those which are cited and relied upon by appellee as sustaining the proposition that a court of equity will rescind a contract merely for the mistake of one party will be referred to and considered. They are Smith v. Mackin, 4 Lans. 41; Rider v. Powell, 28 N. Y. 310; Jackson v. Andrews, 59 N. Y. 244; Crowe v. Lewin, 95 N. Y. 423; Griswold v. Hazard, 141 U. S. 260, 11 Sup. Ct. 972, 999; Webster v. Cecil, 30 Beav. 62; Railroad Co. v. Jackson, 24 Conn. 514; Rowland v. Railroad Co., 61 Conn. 103, 23 Atl. 755.

Smith v. Mackin was a case where the plaintiff had agreed in writing to surrender possession of certain real estate supposing it to be a part only of that which was included in the description, and, having discovered that the description covered the whole, brought an action to rescind the agreement. As the court states in the opinion: "The defendant knew how the fact was at the time the contract was made, and was also aware of the plaintiff's misapprehension in regard to it." The case was one where the defendant's conduct was unconscionable.

Rider v. Powell was an action to reform a bond and mortgage. As expressed, the bond and mortgage did not correspond with the agreement of the parties, which fact the plaintiff discovered the next day. The defendant knew all along that it did not. His conduct was unconscionable.

Jackson v. Andrews was an action brought to reform a deed given by the plaintiff to the defendant, and also a mortgage given by the defendant to the plaintiff, upon the theory that the land was to be conveyed without a warranty of title, and that the covenants of warranty in the deed were inserted by the fraud of the defendant or by mutual mistake, and the plaintiff sought to reform the mortgage by inserting a covenant by the defendant that the entire principal should become due after default in payment of any installment of principal or interest for 30 days. Issues of fact were submitted to a jury, and of their findings the court observed:

"It will be seen that, while this verdict furnishes evidence that the plaintiff may not have known fully the facts,—perhaps the contents of the paper executed and received by him,—it utterly fails to show that the defendant ever agreed or understood that he was to receive a deed of the lots without covenants as to title, or to give a mortgage containing any provisions in addition to that delivered by him."

The court held that the court below properly refused to decree for reformation.

Crowe v. Lewin was an action brought to rescind a contract for the exchange of land for which conveyances had been executed. The court said:

"In this case the minds of the parties never met. The contract in form was not a contract in fact. It originated in mistake, and that mistake not mutual and about the same thing, but different on the part of each. What one meant to sell the other did not mean to buy, and what one meant to buy the other did not mean to sell."

A decree was entered requiring a reconveyance by the parties, respectively; thus rescinding the transaction. The case was one where the contract did not express the intentions of either party.

Griswold v. Hazard was an action to cancel or reform a bail bond by one of the sureties. Referring to the conclusion that the bond ought not to be allowed to stand uncorrected, the court said:

"If it be not justified on the ground of mistake as to the mutual agreement, superinduced by the conduct of the party seeking now to take advantage of it, there could be no escape from the conclusion that the taking of a bond that made Griswold absolutely liable as surety for any amount adjudged to be due from Durant, and not greater than the penalty so named, was, under all the circumstances disclosed, a fraud in the law upon him."

Webster v. Cecil was an action to rescind an agreement for the sale of lands evidenced by a written proposal by one party and a written acceptance by the other. The proposal of the vendor, by inadvertence on his part, named a price which was less than half that which he had just refused, upon the offer of the vendee, during the negotiations. The case was one where the vendee knew when he transmitted his acceptance that the proposal did not express the intention of the vendor.

The cases in 24 Conn. 514, and 61 Conn. 103, 23 Atl. 755, were actions at law where the question was whether a railroad company was entitled to charge its ordinary freight rates for carrying after there had been a preceding negotiation, in which the minds of the parties had not met, in respect to a different rate. They throw little light upon the present question.

In the opinion of the court below some of the foregoing adjudications were cited, and in addition the cases of Bradford v. Bank, 13 How. 57, and Snell v. Insurance Co., 98 U. S. 85, were cited.

Bradford v. Bank was a bill for specific performance of an agreement by the defendants to convey land. So far as the case involved the question of mistake, it was one of a mutual mistake of parties.

Snell v. Insurance Co. was a suit to reform a policy of insurance. The court said:

"We have before us a contract from which, by mistake, material stipulations have been omitted, whereby the true intent and meaning of the parties are not fully or accurately expressed. In the attempt to reduce the contract to writing there has been a mutual mistake, caused chiefly by that party who now seeks to limit the insurance to an interest in the property less than that agreed to be insured. The written agreement did not affect that which the parties intended. That a court of equity can afford relief in such a case is, we think, well settled by the authorities."

A court of equity cannot undertake to make a contract for parties which they have not made themselves, and would equally tran-

scend its just powers by compelling a party to relinquish the fruits of a contract which he has honestly made, and in which there is no taint of wrong to affect his conscience. The rescission or cancellation of a contract is certainly as drastic an interference with its provisions as a modification of it. The consequences may be equally or even more injurious to the party who is deprived of the benefit to which he is entitled by it; and there is no sound reason, and, as we think, no well-considered authority, for the proposition that, although a court of equity will not reform a contract except for the mistake of both parties, it will rescind one merely for the mistake of one party.

"It would be the height of injustice to alter a contract on the ground of mistake, where the mistake arises from misconception by one of the parties, in consequence of his imperfect explanation of his intentions. To make a contract, it is requisite that the minds of the contracting parties agree on the act to be done. If one party agrees to a contract under particular modifications, and the other party agrees to it under different modifications, it is evident that there is no contract between them. If it be clearly shown that the intention of one of the parties is mistaken, and represented by the written contract, that cannot avail, unless it further be shown that the other party agreed to it in the same way, and that the intention of both of them was, by mistake, misrepresented by the written contract." Spencer, C. J., in Lyman v. Insurance Co., 17 Johns. 376. See, also, Nevius v. Dunlap, 33 N. Y. 676; Insurance Co. v. Davis, 131 Mass. 316; Ludington v. Ford, 33 Mich. 123; Dyas v. Stafford, 7 L. R. Ir. 606. These observations are as opposite to an attempt to rescind a contract as to an attempt to reform one.

By the decree of the court below, the contract completed by the terms of the proposal has been completely annulled. It may have been an improvident contract on the part of the complainant; but, clearly, justice would have required nothing further, if the contract had been an ordinary one, entered into by a proposal and acceptance, than to reform the contract so as to correct the mistake, and, as reformed, permit the city of Rochester to have the benefit of it. As it is, the complainant has been wholly absolved from the obligations of a contract which it deliberately entered into, and which it was the legal duty of the executive board to cause to be fulfilled. If the complainant in its bill had prayed for a reformation, and offered to execute the contract when so reformed as to correct its own mistakes, it would have presented itself in an attitude which would, at least, have commanded the sympathy of the court. As the case has been presented, it seems to be without equity, and the decree is therefore reversed, with costs, and with instructions to the court below to dismiss the bill.

SHIPMAN, Circuit Judge. I concur in the result reached in this case, but not in all the restrictions which the opinion will be construed to place upon the power of a court of equity either to reform or rescind contracts upon the ground of mistake. The word "mistake" is of so broad a character, and includes so many varied

circumstances, that rules which undertake to define what a court of equity can do or cannot do in regard to the correction of a mistake, either unilateral or mutual, seem to me to confuse rather than to enlighten. Each case must, in a great measure, be governed by its own circumstances, which appeal or do not appeal to the judgment or the conscience of the chancellor.

If the case now under consideration was simply that the complainant offered to do specified work, and nothing else, for the city of Rochester, for about $857,000; that in this single proposal there was a clerical error of about $36,000, notice of which was communicated to the city when the proposal was being read; that it was accepted as written; that the fact of the mistake was hardly denied, and clearly appeared upon judicial investigation,—it would seem to me that the power of a court of equity to purge a contract from such an error, upon such terms as should be just to the city, or to rescind it entirely, if the amendment was found to be impracticable, ought to be generally recognized. This record presents other circumstances which are important. After the bid of another party upon contract No. 1 had been accepted, the complainant protested that it was entitled to both contracts,—an assertion which the city's proposals showed to be without foundation,—and offered to do all the work upon the correction of the two alleged errors in No. 2,—a proposition which it was impossible for the city to accept. At this stage of the business, the complainant wanted to do the entire work, and apparently wanted nothing else. Its conduct compelled the city's agents to go forward, and complete the award of contract No. 2, in accordance with the terms of the bid. The complainant thereupon, without any additional statement or negotiation, defaulted, and the city gave the contract to the next lowest bidder, for a much larger sum than that contained in the complainant's proposals. The bill of complaint prays for a reformation and amendment of the proposal upon contract No. 2 in respect to the two alleged errors, or for its rescission and cancellation; also that the defendant be either required to enter into a contract for the work described in both contracts as reformed, or that the bids for the whole work be rejected. To compel the city to contract with the complainant for the whole work would be manifestly improper. The alleged error in regard to the tunnel excavation was not one which can properly be called a mistake; it was the result of negligence. The question, therefore, is, shall contract No. 2 be reformed or rescinded by reason of the single error. A decree for the reformation of a contract presupposes a willingness on the part of the mistaken person to execute as reformed. The history of the case, as shown in the record, makes it very doubtful whether a willingness to execute contract No. 2 existed. The complainant, it is right to assume, honestly blundered in supposing that the contracts were to be let for the entire work, which was the result at which it was aiming both in its proposals and in its subsequent proposition. It made three kinds of mistakes. It supposed, or acted as if it supposed, that both proposals must be considered together and be accepted or be rejected; it made

one clerical error in one proposal; and also an error through haste in filling out the estimates. It is impossible to say that it was ever willing to carry out that contract with or without the correction, or that its default was occasioned by the clerical error. It is as probable that it would have defaulted with a correction as without it. A rescission cuts off the city from the right to sue upon its penal bond by reason of the default of the complainant, which I think ought not to be permitted, under the circumstances heretofore stated.