DEWEY v. WHITNEY et al.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

No. 68.

1. SPECIFIC PERFORMANCE—SALE OF LAND—MISTAKE OF VENDOR.

Two sisters were the owners of certain land, and one of them clothed the other with power to sell every part of the land of which she had the legal title, except an acre and a third, which carried with it a right of way of necessity to a highway. The purchaser knew from the vendor that the other sister had been consulted, and objected only to the sale of her acre and a third. *Held*, that the fact that the sisters had forgotten the details of the title, and that the sister owning the acre and a third had certain equities in the rest of the land, was not such a mistake as to prevent specific performance by the vendor of the contract.

2. VENDOR AND PURCHASER—RESERVATIONS IN CONTRACT.

Where land of two vendors is sold subject to the right of one of them to an acre and a third, the location of which was not designated, on the failure of the vendee to seek definite information regarding the reserved lot the court will locate it with reference to all the testimony and upon such principles as are equitable, taking the entire situation into consideration.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This is an appeal by each defendant from a decree of the circuit court for the Northern district of New York (85 Fed. 325) upon a bill in equity which prayed for the specific performance of a contract by one of the defendants for the sale of real estate, and that the legal title to a portion of the land that was conveyed by one defendant to the other should be declared to be held in trust for the complainant.

Wallace Macfarlane and Edward B. Whitney, for appellants.
Richard L. Hand, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Some time in 1883, Miss Maria Whitney, of Cambridge, Mass., and her sister-in-law, Mrs. Elizabeth W. Whitney, of New Haven, Conn., favorably entertained the idea of purchasing together a lot of land in the part of the Adirondacks near Lake Placid, in the township of North Elba, and of erecting cottages thereon. Mrs. Whitney left the mountains before a purchase was made. Afterwards, in September, 1883, Miss Whitney bought for $450 a tract of three acres, known as No. 1, from one Brewster, and subsequently bought from Miss Florence Este a strip of land 30 feet wide, called No. 2, extending from the southwest corner of lot No. 1 to the highway, and thence to Mirror Lake, and took both deeds in her own name. The strip to the highway was for a roadway hereafter called the "Lane," and the strip on the lake was for a boat house. Mrs. Whitney was informed of these purchases, and sent to her sister-in-law $215 for one-half of No. 2, and for one and one-third acres of No. 1. Afterwards, in consequence of the illness of her husband, she did not visit the Adirondacks. Miss Whitney bought for herself four other small parcels of land, built a cottage upon No. 1, and a boat house upon 15 feet of the lake front of No. 2, and occupied the property until the autumn of 1893. She grew weary of the care of the house, and wrote in August, 1893, to Mrs. Whitney in regard to a sale of the entire property, who replied in the same month that, if the reservation of her strip (meaning the strip of No. 1) prevented a sale, she would make no opposition, but that she wanted to keep that piece of land. Miss Whitney replied that she would try to sell her share of the land, reserving the one and one-third acres above the Este lot. A deed of this strip to Mrs. Whitney would give her a right of way by necessity through the lane to the highway. Correspondence between Dewey and Miss Whitney ensued in regard to a purchase of her property, and she wrote him on September 8th that "my sister-in-law, who owns an acre and a third of the place, and who, I supposed, had consented to have it sold with the rest, has written me that she would rather hold on to it longer. I shall inclose a plan of the estate, copied from a map made by the state surveyor a few years ago, and I will mark upon it the piece which belongs to her." Shortly after, they met upon the property, when negotiations were renewed, which resulted in an offer by Dewey of $3,500 for the entire land, buildings, and their contents, with a few exceptions, and

excepting the acre and a third. This verbal offer Miss Whitney accepted all too hastily by letter written on the train as she was leaving the mountains on October 6, 1893, saying that she would be glad of a cash payment of $500, the residue to be secured by mortgage, and making a reservation of a few personal articles in the cottage. This letter was received, and Dewey entered forthwith into possession of the entire portion contracted for. Then followed the discovery by Miss Whitney that she had, in her hurried agreement to sell, forgotten to take note of, and reserve sundry articles of furniture; but these modifications were accepted. The omission of the boat-house site was first spoken of on October 12th in a letter to Dewey, in which she says:

"There is also another matter that did not come into my mind at all since I left Lake P., and that is in regard to the land on which my boat house stands, and which belonged to my sister-in-law in common with me. I shall wish to make good the loss to her by purchasing a piece just as large on one side or other of the present boat house. Does the piece you have bought of Kennedy or of Snow include the land on the border of Mirror Lake, and, if so, will you sell me the desired bit, and at what price? If it is not yours, I must apply to Kennedy or to Miss Este."

She made an unsuccessful attempt to buy from Kennedy land for the purpose named in this letter, and on October 20th received from Dewey $350, which she had agreed to take as a cash payment, instead of $500. It was then agreed that Mr. Chellis, a surveyor at North Elba, should make the deed, and Miss Whitney supposes that he "understands all about the 1½ acres which belong to my sister-in-law." On November 20th, Dewey wrote to Mrs. Whitney for a copy of the description of her acre and a third. She replied on December 9th, proposing that the lane "now jointly held by you and me, by the side of Miss Este's field, shall be continued for, say, 30 feet past my lower boundary line," and "I shall leave the marking entirely to you of the upper boundary. The other three lines lie, of course, between your roadway (that is the roadway which was an eastern extension of the lane), Miss Este's acre, and the Billings line." It was natural that Mrs. Whitney did not wish that the roadway, though it was originally a part of lot No. 1, should be taken as a part of her lot. She would then have left less than an acre and a third in her inclosure. This letter was not replied to; but it appears by Dewey's letter of November 29th to Miss Whitney that he at that time thought that the road running east from the Este purchase was a proper boundary. His explanation of this letter is that he had mistakenly supposed that this road was a distinct purchase, and was not a part of lot No. 1. The title of Mrs. Whitney in the fee of the lane was now brought to mind, and on December 3d Miss Whitney wrote to Dewey that it belonged to her sister-in-law and herself in common, and again on December 6th that the complication about the boat house and the lane did not occur to her until after the sale, and giving as the reason, which was undoubtedly the correct one, that, as her sister-in-law had been continuously away from the vicinity after the joint purchase, her pecuniary rights in the lane had passed out of mind. The Chellis deeds were sent to Mrs. Whitney on October 4, 1894, which con-

veyed to Mrs. Whitney one and one-third acres on lot No. 1, but which included in the lot a part of the roadway, subject to a right of way over it for his benefit, and gave her a right of way over the lane to the lake. A correspondence ensued for six months, which in part related to propositions for settlement of the controversy, and which it would serve no useful purpose to recite, but which ended in Miss Whitney's executing a deed, acknowledged April 26, 1895, to Mrs. Whitney of part of No. 1, the undivided half of a piece of roadway in the southwest corner of No. 1, of 30 feet square (both parcels making one and one-third acres), the undivided half of the lane, and the north 14 feet of the boat-house site. A deed of the remaining parcels was tendered on May 13th to Dewey, with notice that, unless accepted by May 25th, Miss Whitney would rescind the contract. This action was thereupon commenced in the state court, and was removed by the defendants to the United States circuit court. The circuit court decreed that Miss Whitney and Mrs. Whitney should deliver to the complainant a quitclaim deed of the land in question, less an acre and a third, bounded as indicated in Mrs. Whitney's letter of December 9, 1893, who was also to have a perpetual right of way over the complainant's land, to be reserved in the deed. The decree also provided for the complainant's mortgage deed to Miss Whitney, and limited Mrs. Whitney's title to the acre and a third and right of way to the highway.

It appears from the foregoing facts that Miss Whitney had the legal title of a tract of land of about seven acres, with buildings thereon, near Lake Placid; that, as between herself and her sister-in-law, the latter owned one and one-third acres of a three-acre parcel, and half of the lane to Mirror Lake, and of a boat-house site of 30 feet front; that, before the sale to Dewey, Miss Whitney had obtained Mrs. Whitney's consent to a sale of the entire property, but accompanied with the wish that her acre and a third should be reserved. The initial and an important part of the case is that Miss Whitney was clothed with power to sell the whole land, and that the only restriction was a hope that she would not sell Mrs. Whitney's part of lot No. 1. The origin of the difficulty was Miss Whitney's hurried acceptance of Dewey's proposition to purchase at a time when the equities in regard to the ownership of the property had passed from her mind. When she did recollect the facts in regard to the boat house, she undertook, with consideration and courtesy both to Mrs. Whitney and to Dewey, to fulfill her agreement to sell, and to buy another site for her sister-in-law. The latter part of her undertaking she could not accomplish, but she did not recede from her agreement. Meanwhile, during the continuance of the discussions in regard to the terms of the deeds, and after May, 1894, Dewey was expending money in the development of the property and of other adjoining land which he bought.

The case is put by the defendants as if the vendee before the execution of the deed, but after acceptance of the vendor's offer and partial payment, had received notice of the outstanding title of a third person, but persisted in expenditures and in the demand for a deed, notwithstanding such notice. In such case the vendee is

not a bona fide purchaser without notice. That doctrine "has no application where the rights of the vendee lie in an executory contract. It applies only where the legal title has been conveyed and the purchase money fully paid." Villa v. Rodriguez, 12 Wall. 323, 338; Lytle v. Lansing, 147 U. S. 59, 70, 13 Sup. Ct. 254; Wormley v. Wormley, 8 Wheat. 421, 449. This case does not rest upon the doctrine that Dewey was a purchaser without notice of outstanding equities, but upon the fact that the vendor, who was clothed with power to sell every part of the land of which she had the legal title, did make a sale, except the acre and a third, which carried with it a right of way of necessity to the highway, and that Dewey knew from the vendor that Mrs. Whitney had been consulted, and objected only to the sale of her part of the Brewster lot. Permission having been given to sell her equities, subsequent notice that they ought not to have been sold is not effective. It is true that both ladies were under a misapprehension because they had forgotten the details of the title, and perhaps if they had remembered everything they would have sold as Miss Whitney did sell; but this forgetfulness of a minor detail is not one of the class of unilateral mistakes which entitles a party who made the mistake, and is the sufferer, to relief. Moffett, Hodgkins & Clarke Co. v. City of Rochester (Oct. term, 1898) 33 C. C. A. 319, 91 Fed. 28.

We perceive no escape from the conclusion that the court is compelled to carry out the agreement of the parties as made, and as intended to be made under the authority conferred by Mrs. Whitney, especially in view of the complainant's immediate possession and his expenditures in improvements and upon other purchases in the vicinity. The location of Mrs. Whitney's acre and a third remains to be designated, and upon this part of the case we concur in the suggestions of the circuit court, which seem to us to be very pertinent. The court said:

"In determining this question [that of the location of Mrs. Whitney's lot], it should be remembered that the complainant had full and timely notice of Mrs. Whitney's interest, and that he was not justified in relying wholly upon the representations of others. If he wanted definite information regarding Mrs. Whitney's claim, he should have applied directly to her. It is entirely clear that neither party to the contract knew at the time it was entered into precisely where Mrs. Whitney's piece was situated. The descriptions were all general, vague, and uncertain. It certainly was not settled at the time of the original purchase from Brewster, neither was it settled by agreement between the defendants prior to the sale to the complainant. If then the location was not agreed upon between Mrs. Whitney and the complainant, the court must locate it with reference to all the testimony, and upon such principles as are equitable, taking the entire situation into consideration."

The court, after quoting Dewey's letters of November 20th and November 29th, also Mrs. Whitney's letter of December 9th, says:

"Thus it may be said that the minds of the parties met when all were endeavoring to arrive at a fair settlement, and before the situation was obscured by the disputes and misunderstandings which subsequently arose. Furthermore, it is thought that this is the location which the court would have selected if compelled to fix the boundaries had the dispute arisen between the defendants before the sale to the complainant. It would be inequitable to

reduce Mrs. Whitney's lot by a strip 30 feet wide, running its entire length. She would then have not an acre and a' third, but an acre and a third minus a strip 30 feet wide. Thus construed, the contract is perfectly intelligible and capable of execution. The complainant purchased all the land to which Miss Whitney held title, less Mrs. Whitney's acre and a third, which is located as before stated, with the right of way to the public road which the law gives and which the complainant concedes."

The decree of the circuit court is affirmed, with costs in this court.