### B. Denver Coppage,

*vs.*

### The Equitable Guarantee and Trust Company, Trustee under the last will and testament of Thomas S. Bellah, deceased, and Maria Whitney Bellah.

*New Castle, Oct. 30, 1917.*

In suit for specific performance of a contract to sell a lot, extrinsic evidence was properly admitted to identify the lot as described in the memorandum given by the seller.

A court of equity should be liberal in granting relief from the consequences of mistakes of one party to a contract, where the other party is not put in a worse position by reason of the mistake.

A vendor of a lot, will not be compelled to convey for the price agreed upon; it appearing clearly that he was honestly mistaken as to the frontage or area of the land in fixing the price, based on its having a frontage or area less than it really has.

Whether a sale of realty is in gross, that is, without regard to quantity, or is a sale according to area by a price per acre or per front foot, depends on the intention of the parties, as shown by the contract and all the facts and circumstances connected with its making.

He who seeks equity must do equity.

Bill for Specific Performance. The Chancellor stated the facts as follows:

The bill is that of a vendee to enforce specific performance of a contract for the sale of an unimproved lot of land in Wilmington, owned by Thomas S. Bellah in his lifetime and by him devised, as part of the residue of his estate to the Equitable Guarantee & Trust Company in trust for his widow for life, with remainder to other persons, a general power of sale being given to the trustee. After negotiations between the complainant, Mr. Coppage, and Mr. Pennypacker, trust officer of the company, the former paid two hundred dollars, part of the purchase price agreed upon, and obtained the following receipt therefor:

"The Equitable Guarantee and Trust Company.

Wilmington, Del., Nov. 3, 1915.

"Received from Mr. B. D. Coppage two hundred dollars on account of purchase price ($5,000) of lot of Bellah estate on Delaware Ave. above Riverview Ave., settlement to date from Dec. 15/15, taxes to be prorated from that date.

"The Equitable Guarantee & Trust Co.,

"$———            by J. T. Pennypacker, Tr. Off."

On December 14, 1915, within the time fixed by the above memorandum, the purchaser tendered payment of the balance and other compliance with the terms, but the trustee refused to perform the agreement. In the bill the lot was described by metes and bounds, with a front of seventy-one feet on Delaware avenue.

The widow of the testator was made a party defendant. By his will her husband made specific provision for her, expressly declared to be in lieu and bar of her dower or dower rights, and it was alleged in the bill that she had waived her dower rights "by implication only, but had made no express waiver thereof."

In addition to a prayer for a decree requiring the trustee to specifically perform the contract and convey the land, a decree was sought to compel the widow either to file in the Orphans' Court an express waiver, or else to join in the conveyance by the trustee. A demurrer to the bill by the widow has been overruled, and both she and the trustee have answered the bill.

The defense of both is, in substance, that the agreement was for the trustee to sell and the complainant to buy the lot in question by the frontage on Delaware avenue at seventy-five dollars per foot front, and not in gross, and believing that the lot contained sixty-seven feet front the price asked by the seller for the whole was $5,025.00, with an abatement, or deduction, of twenty-five dollars, making the price of five thousand dollars stated in the memorandum; whereas in fact the lot had a front-age of seventy-one feet instead of sixty-seven feet. By the answer of both defendants the statute of frauds was invoked as a defense. In her answer, the widow admitted the allegation as to a constructive waiver of her dower rights.

Testimony of witnesses was heard orally before the Chancellor. The other pertinent facts are stated in the opinion of the Chancellor.

*Henry R. Isaacs,* for the complainant.
*Hugh M. Morris,* for the defendants.

THE CHANCELLOR. In this case the subject of the controversy is a contract respecting land, and the evidence of it was a receipt signed by the vendor for part of the purchase money. The defense of the statute of frauds was expressly raised by the answers, and it was claimed that the memorandum was not sufficient to identify the land sold and bought. Extrinsic evidence was properly admitted to identify the "lot of the Bellah estate on Delaware Ave. above Riverview Ave." *Crockett v. Green,* 3 *Del. Ch.* 466, 487. From such evidence it was clear that the above quoted words of the memorandum could have referred to no other land than the lot described in the bill, viz: a lot with a front of seventy-one feet on Delaware avenue. Furthermore, in the negotiations respecting the sale, the exact location and boundaries of the lot were referred to and mutually understood, being bounded on one side by a wall dividing the lot from another parcel of land which the testator devised to his wife for life; on another side by Delaware avenue; on another side by lands of a stranger; and on the fourth side by land of the complainant. There was, therefore, a complete consensus of buyer and seller as to the subject-matter of the contract.

Indeed, at the hearing the solicitor for the defendant did not rely upon the statute of frauds as a defense, but urgently claimed that there was at the time of the negotiations a mistake on the part of the trustee as to the frontage, and that the price was fixed at five thousand and twenty-five dollars, based on a price of seventy-five dollars per front foot for sixty-seven feet, with a reduction of twenty-five dollars, making the final figure five thousand dollars; whereas the frontage was seventy-one feet. It was claimed, therefore, that the purchaser was not entitled to a conveyance except on payment of an additional price for the four feet proportionate to the net price of five thousand dollars for sixty-seven feet.

From the testimony it was clear that the complainant, Coppage, made an offer for the lot in gross at a price of five thousand dollars, and also clear that the trustee calculated the price per front foot, with a reduction, and this fact was known to the purchaser at the negotiations, though neither buyer or seller then knew of the mistake as to frontage. The case, therefore, is one where a definite lot of land was sold, supposed by both buyer and seller to have a front of sixty-seven feet, and though it does not appear in the memorandum of the agreement that the selling value was fixed by a price per front foot, but rather indicates that it was a sale in gross; still it was a fact that in finally fixing the price both parties to the contract had regard to the number of feet of frontage, and that both were mistaken in assuming that the lot was sixty-seven and not seventy-one feet front. It is equally clear that the mistake was the fault of the seller alone, and that the buyer was in no way responsible. There was no fraud, misrepresentation, concealment, or want of fair dealing on either party. Obviously, also, the seller should have known the dimensions of the land. It may even be assumed that the mistake arose from the want of proper diligence of the seller, though there was some evidence to explain, if not excuse, even this omission.

For the complainant it is urged that the mistake which was solely the result of the defendant's inexcusable carelessness, is not a defense here, and cites 6 *Pomeroy on Equitable Remedies*, (3d Ed.) *p.* 1304; *Fryer on Specific Performance*, *pp.* 366, 367;

*Templin v. James*, *L. R.* 15 *Ch. Div.* 215, 218; *Morely v. Claver-ing*, 29 *Beav.* 84; and *Dewey v. Whitney*, 93 *Fed.* 533, 35 *C. C. A.* 414. . In the last-mentioned case the court found that the mistake of the seller was as to a minor detail and "not one of the class of unilateral mistakes which entitles a party who made the mistake and is the sufferer, to relief," citing *Moffett, etc., Co. v. City of Rochester*, 91 *Fed.* 28, 33 *C. C. A.* 319.

It is not proper, however, to apply this principle in this case, even if it be a sound one. A court of equity should be liberal in granting relief from the consequences of mistakes of one party to a contract where the other party is not put in a worse position by reason of the mistake. *Stoeckle, et al., v. Rosenheim, et al.,* 10 *Del. Ch.* 195, 201, 87 *Atl.* 1006. The broader and juster view to be taken is that in 2 *Pomeroy on Equitable Jurisprudence*, (3d Ed.) § 860, from which the following may be quoted:

" The equitable remedy of the specific enforcement of contracts, even when they are valid and binding at law, is not a matter of course: it is so completely governed by equitable considerations that it is sometimes, though improperly, called discretionary; it is never granted unless it is entirely in accordance with equity and good conscience. It is therefore a well-settled rule, that in suits for the specific enforcement of agreements, even when written, the defendant may by means of parol evidence show that, through the mistake of both or either of the parties, the writing does not express the real agreement, or that the agreement itself was entered into through a mistake as to its subject-matter or as to its terms. In short, a court of equity will not grant its affirmative remedy to compel the defendant to perform a contract which he did not intend to make, or which he would not have entered into had its true effect been understood. * * * A mistake which is entirely the defendant's own, or that of his agent, and for which the plaintiff is not directly or indirectly responsible, may be proved in defense, and may defeat a specific performance. This is indeed the very essence of the equitable theory concerning the nature and effect of mistake."

See also *Mansfield v. Sherman*, 81 *Me.* 365, 17 *Atl.* 300, where there is a full citation of many cases in which courts have refused to compel a vendor to carry out a contract where there has been a mistake on the part of the seller only.

In this case, therefore, the vendor will not be compelled to convey a tract of land for the price agreed upon when it appears clearly that he was honestly mistaken as to the area of the land

and fixed the price based on its having an area less than it really has.

As stated above, it is clear that in the negotiations both parties had regard to the assumed number of feet front in fixing the price. Whether a sale is in gross, i. e. without regard to quantity, or is a sale according to area, as a price per acre or per front foot, depends upon the intention of the parties as shown by the contract, and all the facts and circumstances connected with the making of it. *Norfolk Trust Co. v. Foster*, 78 *Va.* 413, 419; *Benson v. Humphreys*, 75 *Va.* 196, 199; *Hays v. Hays*, 126 *Ind.* 92, 25 *N. E.* 600, *11 L. R. A.* 376.

In *Norfolk, etc., Co. v. Foster, supra*, it was said:

"Whether a contract of sale is one of hazard as to quantity—in other words, whether it is a contract for the sale of a certain tract of land, whatever number of acres it may contain, or of a specified quantity—depends upon the intention of the contracting parties, to be gathered from the terms of the contract, and all the facts and circumstances connected with it. And while contracts of hazard in such cases are not invalid, courts of equity do not regard them with favor. The presumption is against them, and can be repelled only by clear and cogent proof. Consequently, a contract will be construed to be a contract by the acre whenever it does not clearly appear that the land was sold by the tract, and not by the acre. And so, where the contract is for the payment of a gross sum for a tract of land upon an estimate of a given quantity, the presumption is that the quantity influences the price to be paid and that the agreement is not one of hazard."

In Hays v. Hays, supra, it was said:

"Even where the sale has been in gross, and not by the acre, if it appear that the estimated number of acres was, in fact, the controlling inducement, and that the price, though a gross sum, was based upon the supposed area and measured by it, equity will interfere to grant relief, and rescind the contract on the ground of gross mistake."

Presumably in the sale of an unimproved lot of land the quantity or area influences the price. On the question of intention the words of Judge Brockenburgh in *Russell v. Keeran*, 8 *Leigh* (*Va.*) 9, 14, are particularly applicable to the case under consideration:

"There is no doubt that where an estate is expressly sold at a certain price by the acre, and there is a deficiency in the number of acres conveyed,

the purchaser will be entitled to a compensation for that deficiency. *Sugden,p.* 230, quoting 2 *Eq. Cas. Abr.* 688, *pl.* 1.

So too where the land is neither bought nor sold expressly and professedly by the acre, but both parties, in fixing the price for the land, have regard to the quantity which they suppose the estate to consist of, the same rule as to liability for deficiency will prevail. In such case the demand of the vendor and the offer of the purchaser are supposed to be influenced in an equal degree by the quantity which both believe to be the subject of their bargain; a ratable abatement of price will probably leave both in nearly the same relative situation in which they would have stood if the true quantity had been originally known. *Hill v. Buckley*, 17 *Ves.* 401; *Sugden*, 231. Such sale must be considered as in fact and according to the intention of the parties, though not expressly, a sale by the acre."

After all, as has been repeatedly said by the courts and text writers, each case of mistake must, in a great measure, be governed by its own circumstances, which appeal, or do not appeal, to the judgment or conscience of the Chancellor when called upon to enforce performance of an agreement. A court of conscience should not hesitate to give relief from the consequences of an honest mistake, though by doing so it may seem to encourage dishonesty in a buyer or seller in seeking to evade performance of a contract. Relief from the consequences of a mistake should be given to a seller as well as to a buyer, each being helped in an appropriate manner and in such way as not to injure the other.

The sale was none the less in effect a sale by the front foot, though the seller after fixing the price based on a price per foot reduced it twenty-five dollars. This reduction did not turn into a sale in gross a sale by the front foot, for both parties still had in mind the frontage as a basis of valuation.

Inasmuch, therefore, as in equity and good conscience the seller should not in such cases be compelled to part with the land for the price stated in the contract, the court must order the bill dismissed, unless the complainant elects to have a decree for a conveyance of the whole lot upon paying in addition to the unpaid balance of the purchase price named in the contract an additional proportionate price for the excess of quantity over that which the parties to the sale had in mind. This means that for the whole seventy-one feet the price shall be increased

$298.52, which is $74.63 per front foot, the price of sixty-seven feet for five thousand dollars. In other words, pay for the four feet the same rate as for sixty-seven feet.

This was the principle adopted in *Western Mining, etc., Co. v. Peytona, etc., Co.*, 8 *W. Va.* 406, 439, and *Blessing's Adm'r v. Beatty*, 1 *Rob.* (*Va.*) 304, 317, 318. It is but another application of the rule in this court of conscience, that he who seeks equity must do equity.

In case a decree is made for a deed it will embody an order that the widow of the testator join in the conveyance. By her answer she admits that she has by implication waived her dower rights in the land in question without having done so expressly and in the manner provided by the statute. While this admission may estop her from asserting any rights to the land in case the conveyance be made by the trustee only, still as she is a party to the cause the title of the purchaser may be better if she joins in the deed of the trustee than if she does not.

Inasmuch as the dispute and litigation was caused by the mistake of the vendor, the trustee, the costs of all parties to the cause should be imposed upon the trustee.