## DEWITT v. BOWERS.

(Court of Civil Appeals of Texas. San Antonio. June 14, 1911. Rehearing Denied June 29, 1911.)

1. APPEAL AND ERROR (§ 1011*) — REVIEW — FINDINGS—CONCLUSIVENESS.

A finding by the trial court upon conflicting evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

2. SALES (§ 22*) — VALIDITY — MEETING OF MINDS.

Where the seller offered to sell a saloon without the building or lot, and the buyer understood that those were included, there was no completed contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 39–43; Dec. Dig. § 22.*]

3. CONTRACTS (§ 92*)—VALIDITY OF ASSENT—CONDITION OF PARTY.

A party to a contract cannot escape liability because he was intoxicated at the time of its execution, unless he was incapable for the time being of understanding the contract, but a less degree of intoxication will avoid a contract where the drunkenness was caused by the opposite party, and he has taken advantage of it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 411–414; Dec. Dig. § 92.*]

4. TRIAL (§ 252*) — INSTRUCTIONS—APPLICABILITY TO ISSUES.

Where a party to a contract testified that he was intoxicated at the time of execution, but there was no evidence that he was so drunk that he did not understand what he was doing, it was improper to charge the jury upon the right of an intoxicated party to avoid a contract entered into while he was wholly incapable of understanding the nature of the transaction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

5. APPEAL AND ERROR (§ 1062*) — REVIEW — HARMLESS ERROR.

Where a charge submitted three issues to the jury and their verdict could have been based upon any one issue, and the verdict did not indicate upon which issue it was based, the erroneous submission of one of these issues was prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

6. EVIDENCE (§ 113*)—VALUE OF PROPERTY—INADEQUACY OF PRICE.

In an action to recover money paid during negotiations for the purchase of property on the ground that there had been no meeting of minds as to the property to be conveyed, plaintiff claiming that certain real estate was to be included, while defendant claimed that it was a sale of the buildings only, evidence offered by defendant that the price agreed upon would have been inadequate for the land and buildings was material to the issue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

7. CONTRACTS (§ 53*) — RESCISSION — INADEQUACY OF PRICE.

Mere inadequacy of price is no ground for the rescission of a contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 231–232; Dec. Dig. § 53.*]

8. TRIAL (§ 260*) — INSTRUCTION — INSTRUCTIONS COVERED BY OTHERS.

The refusal of special instructions covered by the charge as given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District Court, Parmer County; D. B. Hill, Judge.

Action by J. B. Bowers against M. F. Dewitt. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Cooper & Stanford, for appellant. J. W. Sellars and Hendricks & Boyce, for appellee.

FLY, J. Appellee instituted this suit, and alleged that he was a stockman and a farmer, and that on or about December 12, 1909, being Sunday, while he was within the bounds of the town of Texico, in the territory of New Mexico, he entered the Big Four Saloon, and while there he was approached by the appellant with the proposition to sell to appellee the saloon, fixtures, wines, and liquors therein situated and the personal property appurtenant to said business, "and, as plaintiff understood the offer as made by

the said defendant, the same comprehended and included the fixtures and stock of merchandise aforesaid, also the place of business, to wit, the house and lot in which said business was then being carried on, for the agreed sum of two thousand ($2,000) dollars, for plaintiff says that at said time the said defendant, Dewitt, when the offer was made to sell said property to this plaintiff, used substantially the language 'that everything went,' and that plaintiff thought and believed and avers that it was understood and agreed between said parties that the said house and lot upon which said saloon property was situated was comprehended and included in said offer, and all for the sum of $2,000, which said plaintiff at said time accepted." It was further alleged: "Plaintiff further says that prior to the time that the offer was made by the defendant for the sale of said saloon and the fixtures and property therein mentioned couched in the manner as stated above that plaintiff had been drinking intoxicating drinks to such an extent that at said time, if his intoxicated condition was not so excessive as to render him capable of assent in a legal sense, that his intoxicated condition, however, was such as that he did not thoroughly understand and comprehend the nature and probable consequences of said contract, nor did he thoroughly understand and comprehend the subject-matter of the same as a contract, and made no pretense of any investigation of the condition and status of said property as to the quantity and value of same, and the defendant, knowing the intoxicated condition of the said plaintiff, took advantage of the condition of this plaintiff at said time to trade with him, and make the offer that he did make and to drive a hard and unconscionable bargain upon defendant's part and to obtain possession of plaintiff's check and money, and the plaintiff further says that if defendant asserts that only the saloon and fixtures was included in said offer, and in said contract of sale and purchase, that the value of said saloon and fixtures and said personal property attempted to be sold by the defendant to this plaintiff was inadequate in proportion to the price paid for said property, and that said defendant took advantage of said condition of the plaintiff under such circumstances to make such a bargain and unload property at an inadequate value, to wit, not over the value of $500, upon said plaintiff for the excessive price, and plaintiff is unable to allege specifically in detail the amount of property and the character of same attempted to have been included in said contract." Appellee also alleged that he paid the purchase price, but never took possession of the property, but, when he ascertained the house and lot did not belong to appellant, he demanded the return of his money. He prayed for a judgment for $2,-000, with interest from December 12, 1909.

The cause was tried by jury resulting in a verdict and judgment for appellee in the sum of $2,000, with interest at 6 per cent. per annum from December 12, 1909.

[1] There was an irreconcilable conflict between the testimony of appellee and that of appellant; the former swearing that he thought the house and lot were included in the trade and the latter testifying that he fully explained to appellee that the house and lot did not belong to him, and were not included in the sale of the saloon fixtures and other property. The latter was corroborated by his bartender.

There are no allegations of fraud or misrepresentation on the part of appellant as to what was to be included in the sale which induced appellee to purchase the property, but he asked for the return of his money, which involves a declaration that no contract was ever made, because appellee thought he was buying the house and lot, as well as the fixtures and stock of liquors. In his testimony appellee did not state that the house and lot were mentioned, but that he remembered in "a dream-like way" that appellant told him "the whole thing went," and that he replied "that if the whole outfit went," he would buy. He swore that he interpreted "whole thing" to mean buildings, lots, and everything connected with the business. Appellant testified that he told appellee that he did not own the house and lot, and the question of fact arose as to the credibility of the witnesses and the weight to be given their testimony, and, if no other issue than the failure of the minds of the parties to meet on the subject-matter of the contract had been properly submitted to the jury, there would be no other course presented than the affirmance of the judgment.

[2] The question involved in this case is not one of mutual mistake, but rather a mistake concerning the subject-matter; one party contending that he contracted for a house, lot, saloon fixtures, and stock, and the other that the contract related only to the fixtures, furniture, and stock of liquors. The pleadings present a case of an offer to sell only certain property, while the party to whom the offer was made thought it included other and more valuable property, and, if sustained by the evidence, the contract must be held to be invalid, and must be set aside. Spurr v. Benedict, 99 Mass. 463; Kyle v. Kavanagh, 103 Mass. 356, 4 Am. Rep. 560; Stong v. Lane, 66 Minn. 94, 68 N. W. 765; Haddon v. Neighbarger, 9 Kan. App. 529, 58 Pac. 568; Tyson v. Passmore, 2 Pa. 122, 44 Am. Dec. 181; Rowland v. Railway, 61 Conn. 103, 23 Atl. 755, 29 Am. St. Rep. 175. It is an elementary rule of the law of contracts that the minds of the parties must meet upon the terms and subject-matter in order to constitute a contract; and, if appellant was selling certain property and appellee was purchasing other property, there would be no

contract by which appellee would be bound though there was no fraud upon the part of appellant.

[3] It is the rule of law that a person cannot escape liability on a contract on the mere ground that he was intoxicated at the time of its execution, unless it is proved that he was so intoxicated that he was unable to understand the nature of the contract and the consequences of its execution. He may be intoxicated to such a degree as to be excited, or so as to prevent him from acting with that degree of care that he would use were he sober, still he would not be released from his contractual liability. His contract cannot be avoided, in other words, unless his drunkenness was of such a character that he did not know its true intent or meaning, which is an amelioration of the early common-law rule that asserted that a contract entered into by an intoxicated person was binding upon him. As said by this court, through Justice Neill, in Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584: "To avoid a contract on this ground, the obligor must have been so drunk as to have dethroned reason, memory, and judgment, and impaired his mental faculties to an extent that would render him non compos mentis for the time being, especially where there is no pretense that any person connected with the transaction aided in or procured the drunkenness." It has been held that a less degree of intoxication than that required to absolutely invalidate a contract may serve as a basis for avoiding the same if the drunkenness was caused by the other party, or if he takes unfair advantage of it. This would involve questions of fraud and undue influence, however, and not those of capacity to execute the contract. Page, Cont. § 905, and authorities cited in footnote. This last phase was raised by the pleadings and evidence, and was properly presented to the jury by the charge of the court.

[4] It is not alleged in the petition that appellee was so drunk that he could not and did not understand the nature of the contract; the only allegations being that the use of intoxicating liquor had incapacitated him from exercising his judgment with reference to the subject-matter of the contract, and that he did not understand the subject of the contract. In his testimony appellee stated the circumstances just before, at the time, and immediately after, the contract was made. He gave his language and that of appellant, and told about his giving a check for the $2,000, and told where he was sitting, and the position of his feet at the time the trade took place. He stated that he seemed to be in a dream, but did not testify that he was so drunk that he did not understand what the terms of the contract were, and when he sought to rescind the trade, when he admitted he was duly sober, it was on the ground that he thought he was buying the houses and lot, and not because he was so

drunk that he could not make a contract. No one testified that appellee was so drunk that he did not understand the nature of the contract and the consequences of its execution. He seemed to understand thoroughly what he intended to buy, and only complained because appellant did not understand the contract as he did. He knew what he was doing, according to all the facts in the case.

[5] There being neither allegations nor proof supporting the theory that the contract was void because executed by appellee while he was so drunk that he did not comprehend what he was doing, that issue should not have been submitted to the jury, and as three issues were presented, upon either of which the jury might have based the verdict, and as they did not indicate in their verdict the issue upon which the verdict was rendered for appellee, it cannot be said that the charge on drunkenness did not mislead the jury. We do not think the criticisms of the charge of the court are well founded, but with the exception mentioned, the charge clearly presented the issues made by the pleadings and the evidence.

[6] The sixth assignment of error assails the charge because the court did not instruct the jury that mere inadequacy of price would not authorize a rescission of the contract. Appellee did not claim that inadequacy of price was a ground for rescinding the contract, and proof that the property, not including the house and lot, was grossly inadequate in value as compared with the amount paid by appellee, was made merely to show the improbability of appellee agreeing to purchase it unaccompanied by the house and lot. If the court erred in failing to instruct the jury as to inadequacy of value of the property, it was one of omission alone. The special charge asked by appellant on the subject did not embody the law, but would have withdrawn the matter of inadequacy of value from the jury altogether, while it was a circumstance to be considered with others in the case.

[7] It has been held that, where the inadequacy of price is so great that the mind revolts at it, courts will seize upon the slightest circumstances of overreaching and oppression to rescind the contract, but the fact that a foolish contract was made, so far as one party is concerned, will not invalidate the contract. Stephens v. Ozbourne, 107 Tenn. 572, 64 S. W. 902, 89 Am. St. Rep. 957; Equitable Co. v. Waring, 117 Ga. 599, 44 S. E. 320, 62 L. R. A. 93, 97 Am. St. Rep. 177; Clarke v. Shirk, 170 Ill. 143, 48 N. E. 182; Railway v. Mosby, 93 Va. 93, 24 S. E. 916.

[8] We do not think the court erred in refusing the special charges requested by appellant. In so far as any of them declared the law, the charge of the court was sufficient. It may be said in conclusion that, whether drunk or sober, if appellee honestly believed he was buying the house and lot along with the furniture, fixtures, and

liquors, there was no contract, and he would be entitled to a return of his money with interest from the date that he paid it to appellant. He was never in possession of the property, and refused to have anything to do with it, and, according to his testimony, within 24 hours after he paid the money he repudiated the trade and demanded the return of the money.

The judgment is reversed and the cause remanded.