GASS v. GASS. (No. 5610.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 9, 1916.)

1. MARRIAGE ⊙⇒58—VALIDITY—DURESS.
A marriage taking place through fear of, or to stop a prosecution for seduction, will not be set aside for duress.
[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 115–123; Dec. Dig. ⊙⇒58.]

2. MARRIAGE ⊙⇒59—VALIDITY—DURESS.
A marriage induced by fear of physical violence will not be set aside where the parties lived together as husband and wife after the threatening influences. were removed.
[Ed. Note.—For other cases, see Marriage, Dec. Dig. ⊙⇒59.]

3. MARRIAGE ⊙⇒60—ANNULMENT—EVIDENCE.
In an action to annul a marriage, evidence *held* sufficient to support either the theory that plaintiff married to escape prosecution, or that he recognized defendant as his wife for a considerable time.
[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 125–128, 130–135; Dec. Dig. ⊙⇒ 60.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Fred Gass against Helen Lindner Gass. From a judgment for defendant, plaintiff appeals. Affirmed.

C. J. Adams and Hertzberg, Barrett & Kercheville, all of San Antonio, for appellant. Wm. A. Wurzbach and C. C. Wurzbach, both of San Antonio, for appellee.

CARL, J. Appellant, Fred Gass, filed this suit in the district court of Bexar county against appellee, Helen Lindner Gass, to annul and set aside their marriage, which was consummated in Kendall county about August 1, 1914. This is what is known in common parlance as a "military marriage," and appellant relies upon the allegation that this marriage was under duress, and therefore void, or at least voidable.

Appellee meets this allegation by laying down the proposition that a prosecution was pending for seduction, and that their marriage was consummated on the part of appellant for the purpose of avoiding criminal prosecution. Of course, denial is made that force was used. She answers further that, even if the marriage could have been avoided at the time on account of duress, appellant has waived the right to relief on account thereof, and is estopped to set the same up now because of the fact that he recognized her as his wife and lived with her a considerable time after such evidences of martial law had disappeared.

The facts in this case, briefly stated, are that the father of appellee and her brother-in-law, in company with a deputy sheriff of Kendall county, went to the home of appellant's father, where he was staying, and went upon the gallery, that is some of them did, in a determined, if not an angry manner, and demanded that appellant go with them and marry appellee, to which he demurred. But upon the statement, substantially, that he had to go, that they would take him either dead or alive, he decided that it was the part of wisdom, not to resort to flight, but to accompany his visitors, doubtless bearing in mind the disastrous results which come to some of our Mexican brethren under an application of the "Ley Fugitivo." The testimony is sufficient to sustain a finding that the deputy sheriff then held a warrant for his arrest under a complaint made before the justice of the peace of Comfort. He was taken in an automobile with the parties above named to the home of appellee's father, where he stayed overnight, and we think it safe to say that he was practically under guard, because the old man slept in the adjoining room to which the door led, and the brothers of appellee were sleeping around on the gallery and in the yard under such circumstances as to indicate to a prudent man that flight might at least be dangerous. The next day appellee's father put him in a buggy and took him to Boerne, where he told the clerk, "This young man wants a license," and it is evident that he intended to see that he got this license. After the license was obtained appellee's father took him back to his house, and on the way telephoned to a justice of the peace to be there at 7 o'clock, and upon the arrival of that functionary the happy event was solemnized. That was on Saturday evening. He remained there until Monday, and went away to his father's, where he stayed for about two weeks, until the appellee and her people made their demands so vigorously over the telephone and otherwise that he deemed it prudent to return to his recently wedded bride. He then took her to his father's house, and they lived there somewhere between two weeks and a month, when he again left her and went to Schertz, in Bexar county, where he has since remained, and thereafter he failed to live with her any more. The evidence is conflicting as to the relations they maintained after their marriage and while at the houses of their respective parents, appellant maintaining that, while they occupied, perforce, quarters to-

gether, they did not cohabit as husband and wife, and she maintaining the contrary. There are also in evidence some letters which he wrote to his wife and to her relatives from Sisterdale and from Schertz couched in the most endearing terms and such as to indicate an intention on his part to continue to live with his wife when he got in a position to do so, or got work.

We have not stated in detail the evidence, nor shall we discuss all the law questions which we might under this record; for we think the judgment of the trial court may well be sustained upon two theories:

[1] 1. There is no doubt that appellant knew of the intended prosecution at the time he consented to, even under duress, and did marry the appellee, and it has been held that, even though a marriage should take place under duress, or through fear of, or for the purpose of stopping a criminal prosecution for seduction, the same will not be set aside. As said in Johns v. Johns, 44 Tex. 42:

"The plaintiff appears to have understood that the marriage would cancel the offense with which he was charged and release him from custody. He knew whether he was guilty or not of the charge against him when he married, and he cannot now cancel the marriage and rid himself of his wife, as he did the prosecution, without showing a better reason for it than he has given in his petition."

[2] 2. We might be willing to hold that the father and relatives of appellee were maintaining such a threatening attitude and that the danger was so real or apparent that it amounted to duress independent of the fear of the prosecution. If such were true, and it was not the criminal prosecution which caused him to enter into the marriage, but fear of bodily harm, we would hold that such would be sufficient to annul the marriage, because we doubt very much whether a man whose thoughts are taken up with the speculation as to what an angry parent has in mind to do with him is in a frame of mind to have his judgment meet the other contracting party in a valid and binding agreement. But appellant did live with his wife afterwards, and even after he had gone to Schertz, where he was removed from any threatening influences, if they had in fact existed, still treated her as his wife. On August 6th he wrote her from Spring Branch, addressing her as "My Dear Helen," and tells her that he is trying to rent a farm, and congratulates her on her approaching birthday. In this letter he sends his regards to "all the folks," and it will be borne in mind that she was then under her father's roof. On September 23d he wrote her from Schertz, and addressed her as "Mrs. Fred Gass," and tells her:

"I am looking around now what I can find to suit me, and I will come up as soon as possible and that I got me a place to suit me, but I guess I will find something before long."

He winds this letter up by saying:

"But will come up as soon as possible. I am, as ever, Fred."

[3] It is needless for us to prolong this opinion. We think the evidence is amply sufficient: First, to support the theory that he married appellee to avoid criminal prosecution; and, second, even if he did not do so, he certainly recognized her as his wife and lived with her as such for a considerable time afterwards; that is, the testimony is sufficient to establish that theory. And on either of these theories, the evidence being sufficient, we would not be authorized to disturb the finding of the trial judge before whom the case was tried.

The judgment is affirmed.

