## GARCIA v. GARCIA.

### No. 10766.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 6, 1940.

K. D. Hall, of Refugio, for appellant.

J. Turner Vance, of Refugio, for appellee.

## SMITH, Chief Justice.

This action was brought by Adolfe Garcia, Jr., as plaintiff, to annul his marriage with Josefina Garcia, defendant, which was duly solemnized in Refugio County on May 15, 1935. The annulment was sought on these allegations, that the defendant was enceinte with a child (subsequently born) which she claimed to have been begotten by plaintiff upon the promise of marriage, and through her father demanded that he marry her; that her father threatened plaintiff with criminal prosecution if he refused to marry her; that plaintiff "believed such threats to be real," and believed his life was in danger if he refused to comply with said demands, for all of which reasons he proceeded to marry defendant, contending, nevertheless, that he was not guilty of the alleged seduction and was not the father of said child.

The cause was tried without a jury. Plaintiff testified that the marriage ceremony was performed when Josefina was seventeen and he nineteen years of age. He denied having cohabited with her either before or after the ceremony, and, therefore, of course, insisted he was not the father of the child. He further testified that on the day of the wedding "Mr. Frank Low (Justice of the Peace) and Bob Clarkson (Constable) came and got me at my home and took me to the defendant's house in Woodsboro and said I would have to marry the defendant and Mr. Frank Low married me and the defendant the same day. I went through the marriage ceremony because I thought Mr. Low and Mr. Clarkson were officers and I was afraid not to marry the defendant. Also, the father of the defendant, Jose Deases, sent word by my father that he would send me to the pen in the event I did not marry his daughter, the defendant." The Justice of the Peace testified that "Prior to the marriage ceremony someone had filed a complaint against Garcia for statutory rape and he was sure that Bob Clarkson, Constable of Precinct No. 1, had a warrant for Garcia's arrest." Josefina's father gave purely hearsay testimony concerning the transactions involved, which testimony, because of its obvious incompetence, can not be considered here, even if not objected to below, and apparently was disregarded by the trial judge. The parties through their respective counsel signed an agreed statement of facts, to which the trial judge appended this statement: "The little boy was exhibited to the Court and I never saw a more striking resemblance than that between the child and this plaintiff."

No briefs have been filed by either party to the appeal, which has been regularly submitted, in due order, but both parties, in person and by their respective attorneys, have filed a joint "stipulation for judgment," in which it is recited that "they have agreed and represent that the judgment of the trial court in this cause was erroneous and that same should have been in favor of the appellant and the parties herein now agree and consent that the Court of Civil Appeals reverse the judgment of the trial court and render judgment in favor of the appellant against the appellee, annulling and holding for naught the purported marriage of the appellant and appellee on the 17th day of May, 1935, and further agree that the costs of this appeal be adjudged against the appellant."

The situation is a difficult one, but we have concluded that in deference to a wise public policy—which prohibits the courts from dissolving the marriage relation, when once entered into, except upon clear and satisfactory evidence, and never upon the mere agreement of the parties—we cannot reverse the judgment of the trial court and here render judgment annulling the marriage of plaintiff and defendant, but can only affirm the judgment of the court below.

Plaintiff based his petition for annulment upon the sole ground, in effect, that he entered into the marriage relation

with defendant in order to avoid the consequences of a threatened criminal prosecution growing out of his prenuptial relations with the defendant. This constitutes no ground for annullment. Art. 4628, R.S.1925; 28 Tex.Jur. p. 724 et seq., sec. 30 et seq.; Speer's Marital Rights, 3d Ed., sec. 599; Johns v. Johns, 44 Tex. 40; Merrell v. Moore, 47 Tex.Civ.App. 200, 104 S.W. 514; Gass v. Gass, Tex.Civ.App., 182 S.W. 1195; Huntley v. State, 98 Tex.Cr.R. 530, 266 S.W. 505. As was said in Johns v. Johns, supra: "The plaintiff appears to have understood that the marriage would cancel the offense with which he was charged and release him from custody. He knew whether he was guilty or not of the charge against him when he married, and he cannot now cancel the marriage and rid himself of his wife, as he did the prosecution, without showing a better reason for it than he has given in his petition."

It is true that plaintiff alleged in very general terms fear of bodily harm if he refused to go through with the ceremony, but that allegation was but a conclusion of the pleader, which was negatived by other allegations as well as by the evidence in the case.

The stipulation that judgment may be here rendered annulling the marriage gives no warrant to this court to enter such judgment in the face of the record. The trial judge could not have rendered any other judgment than that entered, and we have no alternative but to affirm.