**CHRISTOPH et al. v. SIMS.**

No. 14255.

Court of Civil Appeals of Texas. Dallas.

Oct. 27, 1950.

Rehearing Denied Nov. 24, 1950.

Earl R. Parker and Floyd W. Snow, both of Dallas, for appellants.

Eades & Eades, Eric Eades, Jr., and J. E. Newberry, all of Dallas, for appellee.

BOND, Chief Justice.

This is a suit, instituted by appellee R. S. Sims to annul a ceremonial marriage, wherein appellant filed a cross-action for divorce. A jury being waived, the cause of action was submitted to the court and judgment entered annulling the marriage, hence denying appellant any relief on her cross-action.

The plaintiff (appellee here) alleged that the purported marriage was occasioned on or about November 26, 1931, in Matamoros, Republic of Mexico, and that, at the time, "* * * he was intoxicated and intoxicated to such an extent that *he has no recollection* of the purported marriage or any of the events leading up to said purported marriage and that by reason of his intoxication and the degree thereof he was mentally incapacitated to enter into a contract of marriage and such alleged contract of marriage is null and void and should now be so declared." (Emphasis supplied.)

The defendant (appellant here) answered by presenting denial to each and every allegation in plaintiff's petition and, by way of cross-action, alleged all necessary venue facts for divorce as to her residence in Dallas County, State of Texas; and for the divorce, alleged that she and defendant were duly and legally married to each other on the date and at the place alleged by plaintiff; that they continued to live together as husband and wife until about June 1, 1933, when, on said date, the plaintiff voluntarily abandoned her, and since said time they have not cohabitated together—which has been more than 10 years next preceding the filing of the suit and her cross-action.

A judgment decreeing incapacity because of drunkenness to invalidate a marriage must be based upon pleadings and evidence that at the time of the marriage one of the parties did not have sufficient mental capacity to make a contract. "* * the rule has been laid down that if a person, when married, is so much intoxicated as to be non compos mentis, and does not know what he is doing, being, for the time, deprived of reason, the marriage is invalid, but it is not invalid if the intoxication is of a less degree than that stated." 18 R.C.L., p. 407; 28 A.L.R. 648, et seq.; 40 L.R.A. 740, 743, Notes; 10 Tex.Jur., p. 62; Portwood v. Portwood, Tex.Civ.App., 109 S.W. 2d 515. In De Witt v. Bowers, Tex.Civ. App., 138 S.W. 1147, 1149, the rule is stated: "* * * His contract cannot be avoided, in other words, unless his drunkenness was of such a character that he did not know its true intent or meaning, which is an amelioration of the early common-law rule that asserted that a contract entered into by an intoxicated person was binding upon him. As said by this court, through Justice Neill, in Wells v. Houston, 23 Tex. Civ.App. 629, 57 S.W. 584: 'To avoid a contract on this ground, the obligor must

have been so drunk as to have dethroned reason, memory, and judgment, and impaired his mental faculties to an extent that would render him non compos mentis for the time being, especially where there is no pretense that any person connected with the transaction aided in or procured the drunkenness.' ". This rule is more restricted to annul a marriage than where applicable to contracts in general. A party claiming he was intoxicated at the time of marriage cannot escape liability unless he was incapable at the time of understanding his acts; he must be so drunk that he did not understand what he was doing and the nature of the transaction. Marriage depends to a great extent on sentiment, attachment, and affection, at and antedating its consummation, and not necessarily on the exercise of clear reason, discernment, and sound judgment, as in other contracts, although such should go hand in hand. Thus, a person may have sufficient mental capacity to contract a valid marriage, although he may not have mental capacity to contract generally.

It is a rule of pleadings as well as of logic that the burden to establish the fact is upon him who asserts it. If the pleader alleges a marriage to exist, the burden is upon him to prove it; if he alleges that no marriage exists, or that a marriage was void or voidable, the burden is likewise upon him to prove it. Good faith in a marital transaction is always to be presumed, and the parties entering into such contract are presumed to be capable of consummating it.

"The rules of pleading which apply in other cases do not apply to a defendant in a divorce case in this state, and although he may not answer at all, it is the duty of the court to hear any testimony which would show that the plaintiff is not entitled to a divorce. Bostwick v. Bostwick, 73 Tex. 182, 11 S.W. 178." Hartman v. Hartman, Tex.Civ.App., 190 S.W. 846. Such rule also applies in the case of annulment and condonation. A defendant may introduce testimony showing affirmatively the issues involved without pleading, where the evidence introduced shows or tends to show that plaintiff is not entitled to divorce or annulment of the marriage. "Such a result is arrived at on the theory that the public is a party to a divorce action, and, as such, interested in defeating the divorce when the plaintiff is not entitled to it." 15 Tex.Jur., p. 506, sec. 51. Marriage is preeminently supported by contract entered into by the parties before the consummation of the status itself, and all such facts and circumstances, before and after the marriage status, are admissible as throwing light on the transaction; and, "In all cases of this kind, however, the courts are quick to look for acts of waiver or condonation, as a strong public policy supervenes with respect to maintaining marriages." 28 Tex.Jur., p. 726. Living together in the same house after marriage, contributing financial support to the wife when sober, raise the inescapable presumption of cohabitation and must be held to show condonation; thus preventing annulment of a marriage superinduced by a state of intoxication.

In the instant case plaintiff's petition to annul the marriage because of intoxication, as we interpret his allegations, merely relates his mental condition as it exists now, in that, "He has no recollection of the purported marriage or any of the events leading up to said purported marriage"; and that "by reason of his intoxication and the degree thereof he was mentally incapacitated to enter into a contract of marriage." Clearly, the allegations present conclusions of the pleader on a question of law as to what his condition was and whether he was incapable of knowing what he was doing. The allegations do not disclose that he was, at the time of the marriage, intoxicated to any degree of non compos mentis as to deprive him of all reason; or that he did not have sufficient mental capacity to make a contract.

We now turn to the testimony, summarized on the issue of plaintiff's intoxication in the light of the aforesaid rules. Only two witnesses gave testimony, the plaintiff and the defendant. Much of their testimony is conflicting. In 1931 each of these parties resided at Falfurrias, a small village in Southwest Texas, about 200 miles

from Mexico border, and about 200 miles further from the City of Matamoros. The plaintiff was a business man engaged in the restaurant business in Falfurrias and in another such enterprise at Kingsville. He was not addicted to drinking intoxicating liquors; was a sober man; and as far as this record shows, never drank intoxicating liquors. The defendant, reared on a farm about six miles from Falfurrias where her parents resided, was a teacher in the public schools. She maintained a home at Falfurrias, kept company with the plaintiff and lived with him for about a year before their marriage;—plaintiff testified, for about six months before their marriage. On September 26, 1931, the plaintiff and defendant, in plaintiff's automobile, went from Falfurrias to Matamoros for the sole purpose of getting married. There is no evidence that they went there for any other purpose; and, while there, accomplished the purpose of their going—they got married, a legal ceremonial marriage—and after the marriage they drove back in plaintiff's car to Falfurrias. Prior to the marriage, the plaintiff had made arrangements in Falfurrias for a house in which they were to live after their marriage, and in which they did take up their abode for some time— she said for about a year; he, for about a month. At any rate, they lived together in that house and the only abnormal thing is, the plaintiff testified that they did not cohabit together; that is, "as man and wife in a sexual way," and that he did "not intend to live with her as a husband." On February 1, 1932 (about four months after their marriage), while they were living together, the defendant gave birth to her baby. The plaintiff testified (not accordant with reason) that he did not know of her physical condition until after the marriage, and then only from what the defendant told him,—notwithstanding they had been living together for more than six months before the marriage. Soon thereafter they moved to Kingsville where they lived together in the same house, plaintiff contributing to the support of defendant and her baby until their separation in 1933. In this connection the plaintiff testified:

"Q. You separated in 1933, is that right? A. I didn't know anything about separating.

"Q. You wasn't drunk all that time? A. Certainly not. I wasn't living with her. As far as I was concerned, I wasn't married. * * *

"Q. You were not with her any time? A. I saw her a number of times.

"Q. That took place for a period of approximately two or three years, is that right? A. Well, I don't know just exactly how long it was.

"Q. You took care of the baby, didn't you? A. I gave her money. * * *

"Q. You had no sexual relations, just felt sorry for her? A. That's correct. * * *

"Q. You gave her money to take care of it (baby) and paid the doctor bills, isn't that right, because you felt sorry for her? A. Correct. I paid the doctor bills.

"Q. You did all this because you felt sorry for her? A. Yes."

As to plaintiff's mental condition at the time of the marriage, he testified that he was not drinking when they left Falfurrias to go to Matamoros, that he was in his normal state of mind when he left, and he remembered while in Matamoros of their leaving there; he drove there and back in his own automobile, but says he does not remember anything that happened while in Mexico, that "I don't remember much about it * * * remember leaving Matamoros"; that he had no intention of marrying while there; that on the road they traveled he got drunk and does not remember what took place; that he drank intoxicating liquor before and after they got to Matamoros and that he only knew about their marriage when they got back to Falfurrias, and defendant told him they were married.

After 1933, when plaintiff and defendant separated, the plaintiff moved from Kingsville to Longview; and there, as he testified, he consulted a young attorney as to his marital status and was advised that Mexican marriages were not legal here in this country and that, in fact, he wasn't

married to her (defendant) legally. In consonance with such advice, and believing same to be true, plaintiff entered into a ceremonial marriage with another woman, with whom he is now living, without obtaining a divorce from the defendant. The defendant also entered into a ceremonial marriage with a Mr. Fleming, in 1937,—she having been advised by the plaintiff in 1936 that he had procured a divorce from her; and, in 1948, the defendant entered into a ceremonial marriage with a Mr. Christoph, with whom she is now living. There is no evidence that at the time of her last marriage Mr. Fleming was living or dead.

■ Summarizing the record evidence, we are of the opinion that the pleadings and testimony, relating the facts and circumstances just before and at the time of the marriage, are insufficient in law to annul the marriage of the plaintiff and defendant. The motive prompting the marriage is evident. Plaintiff and defendant had been secretly living together for six months before they married, resulting in defendant's becoming enceinte. There is no evidence that any man other than the plaintiff had ever had any improper relations with the defendant as to be the author of her condition. Plaintiff admitted that he had sexual relations with her. However, he says: "I think so, about once,"—inconceivable! If he was intoxicated while in Matamoros, he was sober when he began the journey to get married; he was sober enough to know of his leaving Matamoros and sober enough to drive his automobile 400 miles to and from the Mexican City. The wife testified that plaintiff did not drink intoxicating liquors, did not drink en route to Mexico and did not drink while there; that he was sober. If, in fact, the plaintiff was intoxicated to the degree that he cannot now recall what happened at the time of the marriage, he had fully recovered when he got back to Falfurrias; and, having lived with the defendant in the house which he had procured for them, and having contributed financial support to her and her baby when sober, he effectively condoned the acts done while intoxicated as if they had been done when absolutely sober.

■ As we view this record, there is no mitigating fact or circumstance that would justify annulment of the marriage; and, their marriage being legal, and their separation continuous for more than ten years next preceding the filing of defendant's cross-action, the defendant is entitled to a divorce. Therefore, the judgment of the court below is reversed and here rendered denying to the plaintiff annulment of the marriage, and in favor of the defendant on her cross-action for divorcement from their marital status. It is so ordered, and all costs taxed against the plaintiff.

Reversed and rendered.

## On Rehearing.

CRAMER, Justice.

■ The full Court has carefully reviewed our original holding in this case, in view of some of the assignments in the motion for rehearing. While it has often been said, as in Speer in Law of Marital Rights in Texas, 3rd Ed., sec. 597, p. 729, "In determining the validity of a marriage contract, no very different rule is applied from that applicable to other contracts," it is also true that the relationship brought about by marriage is of such public concern that the Legislature has impressed more stringent rules as to the burden of proof with reference to its dissolution than upon the cancellation or setting aside of ordinary contracts. In Garcia v. Garcia, Tex.Civ. App., 144 S.W.2d 605, 606, a proceeding for the annulment of a marriage, the parties agreed that the facts justified, and that the appellate court should render judgment annulling the marriage. The court there said: "The situation as a difficult one, but we have concluded that in deference to a wise public policy—which prohibits the courts from dissolving the marriage relation, when once entered into, except upon clear and satisfactory evidence, and never upon the mere agreement of the parties—we cannot reverse the judgment of the trial court and here render judgment annulling the marriage of plaintiff and de-

fendant, but can only affirm the judgment of the court below." We are in agreement with the rule laid down and applied there. The requirement of full and satisfactory evidence is as applicable to annulment proceedings as it is to divorce proceedings. Such requirement is found in Article 4632, R.C.S. 1925, under Chapter 4, which chapter applies to both annulment and divorce proceedings. The requirement of full and satisfactory proof is also as applicable in the Court of Civil Appeals as it is in the trial court. Train v. Train, Tex.Civ.App., 209 S.W.2d 212, and cases there cited. This Court in its original disposition of this appeal found that the rule as to full and satisfactory proof on the annulment phase of the case had not been satisfied.

On the assignments which attack our judgment granting the divorce under the ten-year separation statute, the record shows that both parties testified to their separation of more than ten years; and such fact, under the record as a whole, was undisputed. The ten-year separation provision of our statute art. 4629, subdv. 4, V. A.C.S. was placed therein by amendment in 1913 (H.B. 34; ch. 97, p. 183, General Laws, 33rd Leg., Reg. Session); and, as held in Robertson v. Robertson, Tex.Civ. App., 217 S.W.2d 132 (See full note thereon in 1 Baylor Law Review, No. 4, p. 479), it is an independent ground for divorce, not subject to the defenses applicable to other grounds for divorce.

Finding no error in our former judgment, the motion for rehearing is overruled.